FILED
SEP 22, 2011

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| SFRL, INC., d/b/a Sioux Falls Regional Livestock, | * * * * | CIV. 10-4152 |
| Plaintiff, | * * | |
| vs. | * * * | ORDER |
| GALENA STATE BANK AND TRUST CO., | * * | |
| Defendant. | * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending is a Motion to Dismiss or Transfer Venue, doc. 6, filed by Defendant, Galena State Bank and Trust Co. ("the Bank"). The Bank requests dismissal for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and for improper venue under Rule 12(b)(3). Alternatively, the Bank urges the Court to transfer the case to the Northern District of Illinois pursuant to 28 U.S.C. § 1406. Plaintiff, SFRL, Inc., d/b/a Sioux Falls Regional Livestock ("SFRL"), resists the motion. For the following reasons, the case will be transferred to Illinois.

### BACKGROUND

Non-party Mississippi Valley Livestock, Inc., ("Mississippi Valley"), an Illinois corporation, regularly purchased large volumes of cattle from SFRL, a South Dakota corporation. On March 21, 2007 and March 22, 2007, Mississippi Valley purchased a total of 288 "fat cattle[1]" from SFRL. Payment was tendered by Mississippi Valley via checks drawn on its checking account with the Bank, an Illinois bank with a place of business in Galena, Illinois. However, on April 2, 2007, SFRL received notice from the Bank that is was dishonoring the two checks due to non-sufficient funds in Mississippi Valley's checking account with the Bank.

---

[1] These are cattle which are ready to slaughter and process into food products.

Between the dates the cattle were purchased and the date the Bank dishonored the checks, Mississippi Valley sold the cattle and the cattle were slaughtered. SFRL was, therefore, unable to exercise its right to reclaim the cattle and suffered a loss of $327,628.81. SFRL asserts the Bank received the cash proceeds from Mississippi Valley's sale of the cattle but nevertheless dishonored the two checks and that shortly thereafter Mississippi Valley filed for bankruptcy. SFRL further asserts the Bank knew of Mississippi Valley's insolvency and had terminated its line of credit at the time Mississippi Valley purchased cattle from SFRL on March 21 and 22, 2007. SFRL brings this action against the Bank alleging it, among other things, conspired to convert SFRL's cattle into cash for the Bank in order to reduce Mississippi Valley's debt to the Bank. SFRL seeks compensatory and punitive damages for claims of conversion, tortious interference, unjust enrichment, civil conspiracy, aiding and abetting, negligence, fraud and deceit, negligent misrepresentation and equitable estoppel.

## DISCUSSION

1. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction

In a diversity action, a federal court may assume jurisdiction over a non-resident to the extent permitted by the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994). Because South Dakota applies its long-arm statute to the fullest extent permitted under the Fourteenth Amendment, the Court's exercise of personal jurisdiction need only comply with the requirements of due process. *Id.* To withstand the Bank's Motion to Dismiss for lack of personal jurisdiction, Plaintiff, SFRL, must make a prima facie showing that these requirements have been met. *Id.* "For purposes of a prima facie showing, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in plaintiff's favor." *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). This prima facie showing must be tested, not by the complaint alone, but by the affidavits and exhibits presented with the motion to dismiss and in opposition to the motion to dismiss. *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259-260 (8th Cir. 1974). When conclusory allegations in a complaint are contested and no factual foundation is supplied, the conclusory allegations are insufficient to confer personal jurisdiction over a

nonresident defendant. *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072-1073 (8th Cir. 2004). While SFRL ultimately bears the burden of proof on the issue, personal jurisdiction need not be proved by a preponderance of the evidence until trial or evidentiary hearing. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991).

"Due process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Dever v. Hentzen,* 380 F.3d at 1073. The Supreme Court has set forth two theories for evaluating minimum contacts, general jurisdiction and specific jurisdiction. *Id.* As described by the Eighth Circuit in *Dever v. Hentzen*,

> Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum. In contrast, specific jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state.

*Id.* (internal quotations and citations omitted). Under both theories of personal jurisdiction, "[s]ufficient contacts exist when 'the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.'" *Digi-Tel Holdings, Inc.*, 89 F.3d at 522 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, (1980)). "In assessing the defendant's reasonable anticipation, there must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp.,* 471 U.S. at 475.

"If a court determines that a defendant has minimum contacts with the forum state, it may then consider 'whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Dever,* 380 F.3d at 1073 (quoting *Burger King Corp.,* 471 U.S. at 476).

The Eighth Circuit uses a five-part test to determine whether defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Digi-Tel Holdings, Inc.*, 89 F.3d at 522-23. The latter two factors are secondary and of less importance than the first three factors, *id.* at 523, and the third factor - - the relation of the cause of action to the contacts - - applies only in the specific jurisdiction context and is immaterial in a general jurisdictional inquiry, *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008). Because the first three factors are closely interrelated, the Court may consider them together. *Digi-Tel Holdings, Inc.*, 89 F.3d at 523.

### A. *Calder* Effects Test

Although SFRL alleged in its Complaint that this Court has general personal jurisdiction over the Bank because of "regular and systematic contacts" with South Dakota, SFRL agreed in its brief that this case is one of specific rather than general jurisdiction. The Bank asserts that it has no contacts with South Dakota and that the South Dakota contacts upon which SFRL focuses were made by Mississippi Valley. SFRL does not dispute these assertions.[2] SFRL first argues that the Court has personal jurisdiction under the "effects test" outlined by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984).[3] In *Calder*, the Supreme Court held that when a defendant directs intentional, tortious actions at a resident of the forum, the defendant may reasonably anticipate being haled into court in the forum to answer for its conduct. *See id.* at 790 (citing *World–Wide Volkswagen*, 444 U.S. at 297–298).

---

[2] SFRL's argument that the contacts of Mississippi Valley with South Dakota are attributable to the Bank is addressed in the following section of this Opinion.

[3] SFRL also cites to SDCL § 15-7-2(2) which extends jurisdiction to "[t]he commission of any act which results in accrual within this state of a tort action[.]"

-4-

The Eighth Circuit applied the *Calder* test in *Dakota Industries*, 946 F.2d 1384, in determining that a California corporation could be sued for trademark infringement, an intentional tort, in South Dakota. There, the defendant California corporation made clothing with an allegedly infringing mark that was available for sale in South Dakota. *Dakota Indus.*, 946 F.2d at 1391. Though the company contended that it did not directly ship the goods there, it was aware that it sold goods to chains with retail outlets in South Dakota. *Id.* The court concluded that the defendant had not merely placed goods into the stream of commerce because the merchandising of the offending clothes was not a "mere isolated act" and that the cause of action asserted flowed from commercial ties to South Dakota. *Id.* at 1390. In the present case, SFRL claims jurisdiction exits over the Bank under *Calder* because:

> The Bank intentionally backed Mississippi Valley for months, knowing that it was insolvent, so that it would have a better opportunity to collect loans extended to Mississippi Valley. The Bank knew that its attempts to mitigate its own losses would mean that SFRL would neither be able to collect the money owed nor to repossess the cattle due to the timing of notice of dishonor, and it knew that this loss would be felt in South Dakota.

(Doc. 8 at p. 7.) The Bank argues that the *Calder* effects test does not negate SFRL's need to show the requisite minimum contacts with South Dakota. The Bank is correct. Courts have struggled with this issue but, in *Johnson v. Arden*, 614 F.3d 785, 796-97 (8th Cir. 2010), the Eighth Circuit clarified that the *Calder* effects test requires more than a finding that the harm caused by the defendant's intentional tort is felt within the forum:

> Additionally, even if the effect of Heineman's alleged statement was felt in Missouri, we have used the *Calder* test merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state. In *Dakota*, we declined to grant personal jurisdiction solely on the basis of forum state effects from an intentional tort. *Id.* at 1391 ("In relying on *Calder*, we do not abandon the five-part [ *Aftanase*] test.... We simply note that *Calder* requires the consideration of additional factors when an intentional tort is alleged."). We therefore construe the *Calder* effects test narrowly, and hold that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction. *See Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992) (per curiam). As explained, *supra*, there are no additional contacts between Heineman and Missouri to justify conferring personal jurisdiction.

*Id.* at 796 -797. Because the record contains no evidence of contacts between the Bank and South Dakota, the Court cannot exercise personal jurisdiction over the Bank based on the *Calder* effects test.

The Court's consideration of the "secondary factors" does not change this conclusion. While South Dakota has an interest in providing a local forum in which its resident may litigate claims against non-residents, the State's "interest in providing its residents with a forum cannot make up for the absence of minimum contacts." *Digi-Tel Holdings, Inc.*, 89 F.3d at 525. Additionally, the convenience of the parties is a neutral factor as one party will be required to travel to litigate this case regardless of the Court's ruling on the Bank's motion.

### B. Conspiracy Theory

SFRL's second approach to establishing personal jurisdiction is the conspiracy theory. According to the cases cited by SFRL, under the conspiracy theory a non-resident defendant involved in a conspiracy who lacks sufficient minimum contacts with the forum state may nevertheless be subject to jurisdiction because of a co-conspirator's contacts with the forum. SFRL asserts that the Bank's alleged participation in a conspiracy with Mississippi Valley (which purchased the cattle in South Dakota) serves as an independent basis for the exercise of personal jurisdiction over the nonresident Bank even without the required minimum contacts.[4] The Court found no cases from the United States Supreme Court, the Eighth Circuit, or the South Dakota Supreme Court addressing the merits of the conspiracy theory of jurisdiction. Those courts allowing a plaintiff to proceed under a conspiracy theory have insisted on specific facts showing the participation in a conspiracy affecting the forum state that, when challenged, are supported by some evidence. *See, e.g., Jungquist v.*

---

[4] SFRL also claims that the Bank is subject to the Court's jurisdiction because Mississippi Valley acted as the Bank's agent for purposes of executing their fraudulent conspiracy in South Dakota. South Dakota's long-arm statute provides that an agent's tortious acts in South Dakota on behalf of a principal will allow a court to exercise jurisdiction over that principal, *see* SDCL § 15-7-1, but there is no evidence of an agency relationship between the Bank and Mississippi Valley. *See, e.g., Tisdall v. Tisdall*, 422 N.W.2d 105, 107-108 (S.D. 1988) (factual elements required to create agency relationship are manifestation by principal that agent shall act for him, agent's acceptance of undertaking, and understanding of parties that principal is to be in control).

*Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C.Cir.1997) (bald speculation or a conclusionary statement that individuals are coconspirators is insufficient to establish personal jurisdiction over the alleged coconspirators) (internal quotations omitted). A plaintiff is required to plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy. *See id.* "Mere allegations of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court." *Baldridge v. McPike, Inc.*, 466 F.2d 65, 68 (10th Cir. 1972).

SFRL's Complaint is not verified, but its comptroller attests in an affidavit that the conspiracy allegations in the Complaint[5] are based "upon information and belief." (Doc. 9 at ¶¶ 2, 27, 28 and 29.) The Bank, however, has submitted the affidavit of its president and CEO attesting, based upon his personal knowledge, that there has never been an agreement between the Bank and SFRL to defraud SFRL, that the Bank was unaware of Mississippi Valley's purchases of cattle in South Dakota prior to being presented with the bad checks, and that Mississippi Valley was never authorized to act on the Bank's behalf.[6] (Doc. 11 at ¶¶ 5, 6 and 10.) Because Mississippi Valley's account had insufficient funds, the Bank could not honor the checks payable to SFRL. (*Id.* at ¶ 9.) The Bank's affidavit based on personal knowledge is to be credited over SFRL's contradictory allegations based merely on information and belief. *Barrett v. United States*, 646 F.Supp. 1345, 1350 (S.D.N.Y 1986). Facts adduced in opposition to jurisdictional allegations are considered more reliable than mere contentions offered in support of jurisdiction. *Id.*

---

[5]The conspiracy allegations in the Complaint are: 1) that the Bank and Mississippi Valley sought to accomplish the object of converting SFRL's property (the 288 fat cattle) into cash for the Bank to reduce the debt Mississippi Valley owed to the Bank; 2) that the Bank and Mississippi Valley had a meeting of the minds on the object or course of action to be taken, namely, Mississippi Valley writing bad checks to obtain cattle, selling the cattle, and transferring cash to the bank before the Bank was required to provide notice of dishonor to SFRL and other livestock sale barns; and 3) that the torts committed by the Bank and Mississippi Valley writing two bad checks to SFRL for the 288 fat cattle constitute one or more unlawful acts. (Complaint, Doc. 1 at ¶¶ 50, 51 and 52.)

[6]The Bank's president also attests that Mississippi Valley has stipulated in a separate action that it knowingly provided false and misleading financial information to the Bank with the intent to deceive the Bank in order to receive loans. (Doc. 11 at ¶ 14, Ex. D.)

For jurisdictional purposes, SFRL's conspiracy allegations are insufficient. None of the conspiracy allegations are based on personal knowledge. At most, SFRL speculates that, because of the timing of the bad checks written by Mississippi Valley, the Bank must have conspired with Mississippi Valley to defraud SFRL. The Bank has countered that speculation with facts based on personal knowledge. The mere possibility, based on speculation, that the Bank conspired with Mississippi Valley is not enough to meet the strict constitutional standards that govern personal jurisdiction. *Cf. Chenault v. Walker*, 36 S.W.3d 45, 56 (Tenn. 2001) ("Chenault's complaint and several affidavits set forth precise allegations and specific facts supporting a prima facie showing of jurisdiction, i.e., that the defendants engaged in a civil conspiracy to defraud him. His case rests on neither conclusory allegations nor farfetched inferences.") There has been no prima facie showing that the Bank participated in a conspiracy with knowledge of its action in or effects in South Dakota so that the Bank can be said to have purposefully availed itself of the privilege of conducting business in South Dakota, thus invoking the benefits and protections of its laws. The Court therefore concludes that SFRL has not met its threshold burden of establishing that this Court's exercise of personal jurisdiction over the Bank under the conspiracy theory would satisfy due process.[7]

2.  <u>Defendant's Motion to Dismiss for Improper Venue</u>

The Bank also moves to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure because "a substantial part of the events and omissions giving rise" to SFRL's claims did not occur in South Dakota. 28 U.S.C. § 1391(a)(2). SFRL argues that venue is proper because the cattle were purchased in South Dakota, the prior relationship between SFRL and Mississippi Valley developed in South Dakota, all of the checks concerning both these and previous sales were deposited in South Dakota, and South Dakota is where the brunt of the injury occurred. The Bank contends that none of the alleged acts that occurred in South Dakota are in any way connected to the Bank. As discussed above, SFRL has set forth only speculative allegations of a

---

[7]The Court's rulings with regard to the conspiracy allegations for purposes of deciding personal jurisdiction are not an indication of the Court's position with respect to the merits of SFRL's claims against the Bank, including the conspiracy claim. It is possible that SFRL ultimately will be able to offer some evidence in support of its claims. At this point, however, SFRL's conspiracy allegations are not sufficient to make a prima facie showing of personal jurisdiction over the Bank in this Court.

conspiracy between the Bank and Mississippi Valley. Accordingly, the Court finds that the alleged acts and omissions of the Bank itself must be considered for purposes of deciding venue. Without the conspiracy, it cannot be said that any portion of the Bank's alleged wrongful acts or omissions occurred in South Dakota, and thus South Dakota is an improper venue for SFRL's claims.

3.  Defendant's Motion to Transfer

In the alternative, the Bank requests venue be transferred pursuant to 28 U.S.C. § 1406 to the Northern District of Illinois, Western Division, which the Bank asserts would have jurisdiction and be the appropriate venue for the case. The venue statute provides, in relevant part: "(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C.A. § 1406(a). As discussed above, jurisdiction does not lie in South Dakota and South Dakota is not a proper venue for SFRL's lawsuit. A federal district court may transfer a case pursuant to section 1406(a), despite the fact that it lacks personal jurisdiction over the defendant. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962) (court may transfer an action under section 1406(a) to cure improper venue, whether or not the transferor court had personal jurisdiction over defendants, as long as the transferee court does have personal jurisdiction over them); *Drayton Enterprises, L.L.C. v. Dunker*, 142 F.Supp.2d 1177, 1186 (D.N.D. 2001) (same; denying motion to dismiss for lack of personal jurisdiction although court lacked personal jurisdiction over defendants and instead ordering transfer pursuant to § 1406); *Uncle Sam's Safari Outfitters, Inc. v. Uncle Sam's Army Navy Outfitters-Manhattan, Inc.*, 96 F.Supp.2d 919 (E.D.Mo. 2000) (although court lacked personal jurisdiction over defendants, motion to dismiss denied without prejudice and case transferred pursuant to § 1406). SFRL argues that South Dakota is more convenient, but it does not dispute that jurisdiction and venue would be proper in Illinois. Transferring the case to the Northern District of Illinois will be more expeditious and inexpensive than an outright dismissal of this case. Accordingly,

> IT IS ORDERED that Defendant's Motion to Dismiss or, in the Alternative, to Transfer Venue, doc. 6, is granted to the extent that the that the Clerk is directed to transfer this case to the Northern District of Illinois, Western Division, pursuant to 28 U.S.C. § 1406(a), in the interest of justice.

Dated this 22nd day of September, 2011.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, Clerk

By /s/ Jackie Neuenkirchen, Deputy